309  F. Supp. 1002

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED
FEB 27 1970
PATRICIA D. HOWARD
CLERK OF THE PANEL



THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

MULTIDISTRICT PRIVATE SECURITIES ACTIONS )
INVOLVING REVENUE PROPERTIES COMPANY    )      DOCKET NO. 32
LIMITED                                  )

---

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER,
JOSEPH S. LORD, III, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

---

PER CURIAM

Revenue Properties, Inc. is a Canadian company involved
in the development and sale of real estate in Canada.  Its
common stock has been listed on the Toronto stock exchange
since April 1965[1]  and there apparently were some over-
the-counter sales in the United States before November 12,
1968.  A public offering of 800,000 shares was made in the
United States under a registration statement, including a
prospectus, filed with the Securities and Exchange Commission,
which became effective on November 12, 1968.  From January
1969 through April 1969 the common stock of Revenue Properties,
Inc. was traded on the American Stock Exchange.  In May 1969
the Securities and Exchange Commission brought a civil action
in the Southern District of New York charging violations of

---

[1]  Trading was suspended on November 25, 1969 at the company's
request.

- 2 -

the Securities Act of 1933 relating to the sale of unregistered common stock and claiming that false information was included in the registration statement and prospectus of November 12, 1968. A consent judgment embodying a permanent injunction was entered on May 8, 1969.[2]

The fourteen civil actions listed on Schedules A and B all relate to the sale of Revenue Properties' stock in this country.[3]   The parties generally agree that these actions fall into relatively distinct categories but they do not agree as to the effect of such a categorization.

The central issue in the actions listed on Schedule A is the contention that the registration statement and prospectus which became effective on November 12, 1968 was false and misleading in material respects, principally in its failure to disclose substantial sales of insider stock during the registration and public offering period and in its failure to disclose the use of improper accounting techniques.  These nine actions are generally referred to as the *false representation cases.*

---

[2]  The Ontario Securities Commission also brought charges against Revenue Properties, Inc. for filing false and misleading financial statements in its 1968 annual report.  These charges were dismissed on January 17, 1970.

[3]  Two of the actions listed on Schedule B - *State Street Investment Corp. v. Dominion Securities Corp., et al.* and *Second Federal Street Fund, Inc. v. Dominion Securities Corp., et al.* - did not come to our attention in time for them to be included in the order setting this matter for hearing in Washington, D.C. on January 23, 1970.  Counsel for the plaintiffs in these actions was present and participated in the hearing on behalf of other parties he also represents.  Since neither of these actions is being *transferred* under section 1407, their omission from the hearing order will cause no prejudice.

- 3 -

The gravamen of the five actions listed on Schedule B is
the sale of unregistered stock for which liability is asserted
under sections 5 and 12(1) of the 1933 Act.  These actions are
generally referred to as the *unregistered stock cases.*

Although the *Signorelli Action* is listed on Schedule A,
it is a hybrid action.  Court I presents a typical *unregistered
stock* claim with respect to 1,000 shares of common stock pur-
chased in late October 1968.  Count II presents a typical *false
representation* claim based on 200 shares purchased on February 18,
1969, and allegedly included in the public offering.  Both are
brought as class actions: (I) on behalf of "all other purchasers
of common shares of the defendant corporation similarly situated
who purchased their shares between August 31, 1968 and
November 12, 1968" *and* (II) on behalf of "all other persons who
purchased common shares of the corporation since November 12, 1968
pursuant to the registration statement . . . and who sold the same
at a loss or who still hold the same at a loss."  While the
Signorellis are the only parties who seek to represent the
*unregistered stock* class, their asserted representation of the
*false representation* class in Count II is in potential conflict
with similar assertions of other plaintiffs as to the same
class. [4/]

---

[4/]   The following plaintiffs also seek to represent a similar
class:  Milton Frisch (S.D. N.Y.), Joseph Cantatore (S.D. N.Y.),
and Glen C. Jeckel (D. Mass.).

- 4 -

Although more shares are involved in Count I
than in Count II, the plaintiffs do not allege that they
either sold or retained this stock at a loss while in
Count II they allege that they have retained the stock and
suffered a substantial loss.  For this reason, we have
treated the Signorelli action as a "false representation case"
*for the sole purpose* of effectuating its transfer to the
District of Massachusetts.  We do not mean to infer that the
Count I claim is unmeritorious nor do we pass on their right
to represent either class.  Further, our action is without
prejudice to the right of any party to request the transferee
court to sever Count I and consolidate it with the other
unregistered stock cases for pretrial proceedings.

At the outset we note that all parties who have responded
to the several motions and to our order to show cause favor some
type of coordinated or consolidated pretrial proceedings.  All
parties agree and we so find that there are common questions of
fact *at least* as to each category and that the convenience of
parties and witnesses and the just and efficient conduct of
these actions would be furthered by transfer under section 1407.

The disagreement among the parties and our difficulty with
this matter is twofold:  (1) should the *unregistered stock cases*
and the *false representation cases* be treated independently or
should they be combined for pretrial purposes and (2) should
the Massachusetts actions be transferred to the Southern District
of New York or should the New York actions be transferred to the

- 5 -

District of Massachusetts.   The defendants generally favor
consolidation of *all actions* in the Southern District of
New York.   The plaintiffs in the three New York *unregistered*
*stock cases,* the plaintiffs in the five Massachusetts *false*
*representation cases* and the plaintiffs in the *Robertson*
*Case* all favor separation of the two groups of cases for pretrial
purposes.   If there is to be a transfer, the Massachusetts
plaintiffs and *Robertson* favor transfer to Massachusetts and
the New York plaintiffs (except Robertson) favor transfer to
the Southern District of New York.

Those who favor the transfer of *all actions* to a single judge point out that nearly all of the complaints refer to the sale of unregistered stock. The sale of unregistered stock is one of the fraudulent and misleading deficiencies alleged in most of the *false representation cases* Thus the plaintiffs in the *false representation cases* may want to establish the sale of unregistered stock, but the converse does not appear to be true. We are not convinced that transfer of these two groups of cases for joint coordinated or consolidated pretrial proceedings would serve the convenience of the parties and witnesses in the *unregistered stock cases* or further the just and efficient conduct of those actions. It may be, however, that subsequent developments will indicate that pretrial of both groups can be satisfactorily conducted simultaneously and our decision is without prejudice to the right of any party to seek further consolidation in the transferee court.

Those supporting transfer to the Southern District of New York do so for the following reasons: (1) venue over the majority of the defendants is more clearly established in that district than in Massachusetts, (2) numerically, more parties prefer transfer to the Southern District of New York, (3) the majority of the witnesses and documents located in the United States are in the Southern District of New York, (4) the Securities and Exchange Commission action was commenced in the Southern District of New York, and (5) the American Stock Exchange, on which the stock was traded, is located in the Southern District of New York.

We do not find any of these reasons compelling enough
to warrant transfer to the Southern District of New York.
Unlike section 1404(a), venue is not particularly relevant
to the selection of a transferee court under section 1407.
Nor is the preference of those parties who are defendants in
both districts controlling.  It is true that more of the
material witnesses and documentation are located in New York
than in Boston but it appears that much if not most of the
witnesses and documents are located in Canada, a fact which
gives little support to either district.  It is particularly
significant that the witnesses and the documents which are
said to be located in New York City are generally under the
control of the defendants and can readily be produced in
either district.[5/]

We have selected the District of Massachusetts for three
principal reasons:  (1) more *plaintiffs* favor transfer to
Massachusetts than favor transfer to New York, (2) a substan-
tially greater number of shares (and potential liability)
are involved in the actions now pending in the District of
Massachusetts and (3) the Massachusetts actions have all been
been assigned to Judge Caffrey[6/] who is willing to accept
the responsibility for conducting coordinated and consolidated

_____

[5/]   This is unlike the situation where voluminous documents are
under the control of a non-party and cannot be readily produced
in another location.
[6/]   The Massachusetts *unregistered stock* cases were originally
assigned to Judge Julian but have recently been re-assigned to
Judge Caffrey by that Court.

- 8 -

pretrial proceedings in these cases.  Unlike some of the
multidistrict litigation which comes before us7/ the choice
of the most appropriate transferee forum is far from obvious
but we think on balance that transfer to the District of
Massachusetts is the better choice.

IT IS THEREFORE ORDERED that the actions listed on the
attached Schedule A pending in the Southern District of New York
be and the same are hereby transferred to the District of
Massachusetts and with the consent of the District Court for
the District of Massachusetts, evidenced by written consent
signed by the Chief Judge and filed herein, those actions are
assigned to Judge Andrew A. Caffrey for coordinated or consoli-
dated pretrial proceedings under 28 U.S.C. §1407.

IT IS FURTHER ORDERED that the actions listed on the
attached Schedule B pending in the Southern District of New
York be and the same are hereby transferred to the District of
Massachusetts and with the consent of the District Court for
the District of Massachusetts, evidenced by written consent
signed by the Chief Judge and filed herein, those actions are
assigned to Judge Andrew A. Caffrey for coordinated or consoli-
dated pretrial proceedings under 28 U.S.C. §1407.

Attachments

7/  See, for example, *Protection Devices*, 295 F. Supp. 39 (1968);
*Gypsum Wallboard*, 297 F. Supp. 1350 (1969); and *Hendersonville,
N.C. Air Disaster*, 297 F. Supp. 1039 (1969).

DOCKET NO. 32                                    SCHEDULE A

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Bankers Trust Company, etc., et al. v. Revenue Properties Company Limited, et al. | Civil Action No. 69-1149C |
| Explorer Fund, et al. v. Revenue Properties Company Limited, et al. | Civil Action No. 69-1150C |
| Glen C. Jeckel v. Revenue Properties Company Limited, et al. | Civil Action No. 69-1151C |
| The U. S. Fund N. V. v. Revenue Properties Company Limited, et al. | Civil Action No. 69-1287C |
| Essex Fund, Inc. v. Revenue Properties Company Limited, et al. | Civil Action No. 70-88C |

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Charles S. Robertson, etc. v. Revenue Properties Company Limited, et al. | Civil Action No. 69-4911 |
| Milton Frisch, et al. v. Revenue Properties Company Limited, et al. | Civil Action No. 69-3026 |
| Joseph Cantatore, et al. v. Alex J. Rubin, et al. | Civil Action No. 69-5678 |
| Ernest L. Signorelli, et al. v. Harry Rubin, et al. | Civil Action No. 70-49 |

DOCKET NO. 32                                        SCHEDULE B

## DISTRICT OF MASSACHUSETTS

State Street Investment Corp. v. Dominion          Civil Action
Securities Corp., et al.                           No. 69-892J

Second Federal Street Fund, Inc. v. Dominion       Civil Action
Securities Corp., et al.                           No. 69-893J

## SOUTHERN DISTRICT OF NEW YORK

Jefferies & Company, Inc. v. W. D. Latimer         Civil Action
Company, Limited, et al.                           No. 69-4878

Grace Canadian Securities, Inc. v. Neuberger       Civil Action
& Herman, et al.                                   No. 69-4757

State Street Investment Corp., et al. v.           Civil Action
Grace Canadian Securities, Inc., et al.            No. 69-4766

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

JUL 28 1970

PATRICIA D. HOWARD
CLERK OF THE PANEL

MULTIDISTRICT PRIVATE SECURITIES          )
ACTIONS INVOLVING REVENUE PROPERTIES      )
COMPANY LIMITED                           )     DOCKET NO. 32
                                          )
*Richard L. Frank v. White, Weld & Co.,*  )
*et al.,* N.D. Calif., C.A. No. C-70-740   )



ORDER

BEFORE ALFRED P. MURRAH, CHAIRMAN AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH
S. LORD, III, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

PER CURIAM

This action, filed on April 7, 1970, appeared to be
a "tag-along case" subject to transfer to the District of
Massachusetts on the basis of the prior hearing and for the
reasons stated in our prior decision in this litigation.
*In re Revenue Properties Litigation,* 309 F.Supp. 1002 (JPML
1970). Pursuant to Rule 12, R.P.J.P.M.L., a *conditional
transfer order* was entered and distributed to all counsel on
May 22, 1970. As no opposition was filed during the ten day
stay of execution, transfer became effective on June 2, 1970
and the order was transmitted to the Clerk of the District of
Massachusetts. Counsel for the plaintiff thereafter noted

his opposition to the transfer but since transfer had been
effectuated he filed a motion to remand.  This motion has been
well briefed by both parties, none of whom have requested
a hearing.

The sole question is whether this action is a "tag-along
case" that is, one sharing *common questions of fact* with other
actions included in this multidistrict litigation.  The
plaintiff claims that its action is different from all others
since he has named as defendants White, Weld & Co. (hereinafter
White, Weld) *and* its San Fransisco sales representative.
It may well be that whether the San Francisco sales repre-
sentative *personally* knew or should have known of the actual
financial condition of Revenue Properties Ltd. at the time the
plaintiff purchased his stocks  is a question not common to
any other actions.  But this factor alone would not justify remand
of the entire action.[1/]  The thrust of the plaintiff's action
goes far beyond misrepresentation by the San Francisco sales
representative for it involves the *national effort* of White, Weld
to sell stock of Revenue Properties, Ltd.  One of the specific
issues raised by the plaintiff is whether White, Weld knew
or should have known that Revenue Properties Ltd. had not
complied with all applicable regulations governing the issuance,
sale and trading of its stock in the United States.  This

---

1/    There has been no suggestion by either party that the claims
against the San Francisco sales representative, apparently one
John Chapman, be *separated* and remanded to the Northern District
of California.  We would be disposed to consider such action if
favored by the parties and if not inconsistent with the goal of
furthering the just and efficient conduct of this entire litigation.

- 3 -

question involves a more fundamental question, common to all of the *unregistered stock cases*: whether or not the stock was properly registered for sale in the United States.

White, Weld is a party to at least two other actions in this multidistrict litigation.  It is the defendant in another action in which the allegations in the complaint are substantially identical to those in the instant case.[2] Indeed White, Weld has also brought its own action against those from whom it purchased Revenue Properties stock and seeking damages "in any amount which White, Weld & Co. sustains as a result of the claims of its customers."[3] Both of these actions were filed in the Southern District of New York and transferred to the District of Massachusetts under 28 U.S.C. §1407.

This action clearly involves substantial questions of fact common to actions which are part of this multidistrict litigation. The convenience of the parties and the witnesses in this multidistrict litigation and the just and efficient conduct of this litigation would not be served by the remand of this action to the Northern District of California.

MOTION DENIED.

---

2/   *United States Trust Co.of New York v. White, Weld & Co., et al.*
3/   *White, Weld & Co. v. Gilligan, Will & Co., et al.*

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

OCT 20 1971

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

PATRICIA D. HOWARD
CLERK OF THE PANEL

MULTIDISTRICT PRIVATE SECURITIES ACTIONS )
INVOLVING REVENUE PROPERTIES COMPANY LIMITED )
                                             )
*Phillip Miller v. Harris, Upham & Co., Inc.* )
*and Deson Sze v. Revenue Properties Co., Ltd.,* )  No. 32
*et al.* , S.D. New York, Civil Action No. 71 )
Civ. 1332 )

OPINION AND ORDER

---

BEFORE ALFRED P. MURRAH, CHAIRMAN* AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH
S. LORD, III, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

---

PER CURIAM

    In 1970 the Panel transferred fourteen actions arising
out of the issuance and sale of the securities of Revenue Pro-
perties Co., Ltd. to the District of Massachusetts for coordin-
ated or consolidated pretrial proceedings.  In re Revenue Pro-
perties Litigation, 309 F. Supp. 1002 (J.P.M.L. 1970).[1]/ Upon
learning of the pendency of the above-captioned action in the
Southern District of New York, the Clerk of the Panel entered
a Conditional Transfer Order, pursuant to Rule 12 of the Panel's
Rules, _____F.R.D. _____, stating the Panel's intention to trans-
fer the action to the District of Massachusetts as a part of the
Revenue Properties Litigation.  The plaintiff filed a timely
opposition to the proposed transfer and has moved to vacate the
Conditional Transfer Order.  No response to the motion has been
received from the two defendants, Harris, Upham & Co., Inc. and

---

*    Although Judges Murrah and Lord were not present at the
hearing, they have, with the consent of all parties, participated
in this decision.
1/    Eleven related actions have been transferred to Massachusetts
since the filing of the initial Opinion and Order.

- 2 -

Deson Sze, but the third-party defendants in the action, Revenue
Properties Co. and others, have filed responses favoring transfer.

Plaintiff alleges that Harris, Upham & Co. and its reg-
istered representative, Deson Sze, violated the federal securities
laws in connection with the sale of 1500 shares of Revenue Pro-
perties stock to plaintiff.  He describes as the gravamen of
his action the allegations that the Prospectus of Revenue Properties
contained misleading and untrue facts and that Harris, Upham and
its representative engaged in additional material misrepresenta-
tions and omissions in connection with these sales.  Plaintiff
asserts that the only question of fact common to his action and
the previously transferred cases concerns the truth of statements
in the Revenue Properties' Prospectus which he received prior
to his purchases.  The remaining questions are said to be non-
common, involving the representations and omissions of Harris,
Upham and its individual representative.  On this basis, plaintiff
concludes that only the common issues of fact, concerning the
Revenue Properties Prospectus, should be transferred to Massachusetts
and that the remaining issues should be left in the Southern Dis-
trict of New York. 2/

---

2/      In support of his request that only common fact issues be
transferred, the plaintiff cites In re Revenue Properties Litigation,
314 F. Supp. 1255, 1256 n.1, which states:
        "There has been no suggestion by either party that
        the claims against the San Francisco sales representa-
        tive, apparently one John Chapman, be separated and
        remanded to the Northern District of California.  We
        would be disposed to consider such action if favored by
        the parties and if not inconsistent with the goal of
        furthering the just and efficient conduct of this entire
        litigation."    (continued next page)

- 3 -

Plaintiff makes no mention of the third-party complaint which has been filed by the defendants against Revenue Properties and certain related parties. That complaint alleges that if the defendants are found to have made negligent misrepresentations, the third-party defendants are liable to them in the amount of any liability because of their primary fault in making the initial misrepresentations. The third-party defendants point out that plaintiff's proposed solution would leave the third-party action in the Southern District of New York, even though the question of Harris, Upham's investigation of and relationship with Revenue Properties would be of interest to the parties in the multidistrict cases before Judge Caffrey.

We have concluded that this case must be transferred to the District of Massachusetts for coordinated or consolidated pretrial proceedings. In past cases, we have generally found that actions against brokers for misrepresentations concerning a given corporation's stock raise questions of fact common to the derivative and representative actions brought by shareholders of that same corporation.[3]

----

2/      (continued)
While Section 1407 authorizes the separation of "any claim, cross-claim, counter-claim or third-party claim ..." from the remainder of an action, see, e.g., In re Penn Central Securities Litigation, 325 F. Supp. 409 (J.P.M.L. 1971), it provides no authority for a severance of the type contemplated by plaintiff. The language of the cited case is consistent with this statutory language.
3/      In re Seeburg-Commonwealth United Litigation, ___ F. Supp. ___ (J.P.M.L. Sept. 1, 1971); In re Revenue Properties Litigation, ___ 314 F. Supp. 1255 (J.P.M.L. 1970). In a particular case, however, it may be shown that the factual allegations concerning the broker's liability are of an individual nature and that transfer is unwarranted. In re Four Seasons Securities Litigation, ___ F. Supp. ___ (J.P.M.L. Aug. 25, 1971).

- 4 -

The facts of this case bring it within the general rule.  The
allegations of liability made against Harris, Upham and Deson
Sze rest primarily on questions of fact concerning the financial
affairs of Revenue Properties and duplication of discovery would
most certainly result unless this case is transferred.  Discovery
concerning any individual misrepresentations alleged by the
plaintiffs may be scheduled in the most appropriate manner by the
transferee judge.

IT IS THEREFORE ORDERED that the plaintiff's Motion to
Vacate the Conditional Transfer Order is DENIED and IT IS FURTHER
ORDERED that the above action be, and the same is, hereby trans-
ferred to the District of Massachusetts and assigned to the Honor-
able Andrew A. Caffrey for coordinated or consolidated pretrial
proceedings under 28 U.S.C. §1407.